**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 20-51302-CAG** |
| **AMBERSON NATURAL RESOURCES LLC,** | § | |
| | § | **Chapter 11** |
| DEBTOR. | § | |

**DEBTOR'S CONFIRMATION BRIEF AND
RESPONSE TO CONFIRMATION OBJECTIONS**
*Relates to ECF No. 88*

Amberson Natural Resources, LLC (the "<u>Debtor</u>") debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "<u>Case</u>") submits this brief in support of and response (this "<u>Response</u>") to objections to confirmation of the Debtor's proposed chapter 11 plan (ECF No. 58, the "<u>Plan</u>").[1]

## I.     Introduction and Solicitation results

1.     The Debtor is pleased to report the results of solicitation reflect near unanimous acceptance of the Plan, as detailed more fully in the *Declaration of Scott D. Lawrence Regarding Solicitation of Votes and Tabulation of Ballots Cast on Debtor's Chapter 11 Plan*, filed contemporaneously herewith (ECF No. 97, the "<u>Lawrence Declaration</u>"). In particular, the Debtor received unanimous votes to accept the Plan from Class 6 General Unsecured Claims, which consists entirely of third-party claimants and creditors whose only interest in this Case is to maximize the value of distributions the Debtor proposes to make under the Plan.

2.     These votes to accept represent recognition of the Debtor's and the Lender's efforts in this Case to ensure that the creditors of the Debtor's estate receive the best possible recovery under the circumstances. The Plan utilizes an exit financing facility provided by the Lender to

---

[1] Capitalized terms not otherwise defined herein are used as defined in the Plan.

ensure creditors receive a risk-free, meaningful distribution on claims quickly, and then preserves the benefit of the Debtor's Causes of Action and other valuable assets for distribution to creditors later. The Debtor seeks confirmation of the Plan, because it is the best option available for the creditors in this Case, and because all but one of the creditors voted to accept the Plan.

## II.        McAllen Objection

3.        The Debtor received an objection from James A. McAllen and certain of his affiliates (ECF No. 88, the "McAllen Objection"). The Debtor seeks for the Court to overrule the McAllen Objection in full and confirm the Plan.

### A.        Separate Classification of McAllen Claims Objection

4.        The McAllen Objection argues that the Plan improperly classifies the claims of the McAllen Parties separately from Class 6. However, the classification is proper, because the McAllen Parties have non-creditor interests at stake in the Plan that justify the separate classification. "The Fifth Circuit and other courts have recognized that where the separately classified creditor has some non-creditor interest that 'taints' its vote, separate classification is not improper gerrymandering." *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202, 236-37 (Bankr. W.D. Tex. 2008) (Gargotta, J.). "A creditor's ongoing involvement in litigation with the debtor has been held to be such a non-creditor interest, justifying separate classification of the creditor's claim." *Id.* "An ongoing business is not a prerequisite to a finding of a non-creditor interest sufficient to justify separate classification." *In re Heritage Organization, LLC*, 375 B.R. 230, 304 (Bankr. N.D. Tex. 2007). Where a party opposing confirmation has litigation exposure as a target in an adversary proceeding and is motivated to block confirmation to prevent an estate from continued litigation, that party has a non-creditor interest that justifies separate classification. *See id.* at 305.

5.      As the Court is already familiar, the McAllen Parties are controlled by James A. McAllen, who is the Debtor's Manager's former father-in-law. The Debtor and McAllen have been embroiled in the CG Dispute since being ordered to arbitrate the CG Dispute alongside a multitude of disputes that are not related to the McAllen Parties' claims against the Debtor's estate. The Debtor seeks to reverse the determination that the CG Dispute was arbitrable, and thereafter to recover the value of the CG Property for the benefit of the creditors of the Debtor's estate. Importantly, liquidation of the CG Property would also benefit holders of in excess of $1 million of general unsecured claims with no other interest in this Case except to receive the greatest possible distribution. The McAllen Parties and the CG Interests they hold, conversely, are the likeliest source of that recovery and view opposition to confirmation as just another defensive move to prevent the Debtor from recovering and liquidating the CG Interests.

6.      The link between the McAllen Parties' non-creditor interests and their vote to reject the Plan is evident. The McAllen Parties view the CG Property as theirs and view the prospect of losing ownership and control of the CG Property as unacceptable, leaving aside the economic value of the CG Property. The McAllen Parties seek to end the Debtor's continued efforts to recover and liquidate the CG Interests, despite the benefits of pursuing this litigation for the rest of the Debtor's creditors, with the support of the Lender's financing as proposed in the Plan.

7.      If the Plan is not confirmed, there is no alternative available to the Debtor's estate except conversion to Chapter 7. Such a conversion is not in the creditors' best interests, because they will no longer have access to the Lender Exit Loan for immediate, risk-free distributions to creditors or to continuing financial support from the Lender to continue to pursue liquidation of the CG Interests. There are no other significant assets available to satisfy any creditors' claims.

8.     Other creditors in the Case have voted unanimously in favor of the Plan. No other creditor asserted an objection to the Plan except the McAllen Parties. There is no legitimate reason why a creditor would oppose confirmation of a liquidation plan for the Debtor. *See Heritage*, 375 B.R. at 305 (noting that "a simple plan of liquidation" for the debtor in that case provided no legitimate reason why creditors would oppose the plan). The Plan is an improvement over a simple plan of liquidation, because it provides for the Exit Loan financing to ensure a distribution to creditors and continuing financial support for the litigation of the CG Dispute.

9.     In sum, the separate classification of the McAllen Parties is justified because their unique non-creditor interests in this Case taint their votes to reject the Plan.

**B.     Separate Classification Objection Moot**

10.    In addition to the above arguments concerning classification, the Debtor has a pending objection to the McAllen Parties' claims in this Case (ECF No. 87, the "<u>Claim Objection</u>"). As stated more fully in the Claim Objection, filed nearly three weeks in advance of confirmation, the Debtor has assigned its CG Interests to McAllen in compliance with this Court's judgment and order to do so in connection with the CG Dispute. The only remaining relief to which the McAllen Parties may be entitled is a $350,000.00 attorneys fees award stemming from that judgment, and they won't even be entitled to that relief if the Debtor prevails on the CG Dispute. If the McAllen Parties' claims are estimated at $350,000.00 or less and classified with those of the other general unsecured claims in this Case in Class 6, Class 6 will still have voted in favor of the Plan, notwithstanding the McAllen Parties' vote to reject the Plan. This moots the classification objection. *See*, *e.g.*, *In re Heritage Organization, L.L.C.*, 375 B.R. at 302-03.

**C.     Exit Loan Classification Objection**

11.    The McAllen Objection argues that the Lender Exit Loan Claims should not be classified under the Plan; however, the Debtor will accrue the Lender Exit Loan Claims prior to

the Effective Date as a necessary component of making the initial distributions contemplated under the Plan. Furthermore, the Lender Exit Loan Claims are subordinated to the McAllen Claims and General Unsecured Claims as to the Lender Contribution, all according to the Plan. The Lender Exit Loan Claims receive priority repayment from Distributable Cash, which excludes the Lender Contribution. The Plan accomplishes these goals for the benefit of holders of Claims in these classes and therefore the classification of the Lender Exit Loan Claims is proper. Finally, the Lender Exit Loan Claims are classified in Class 3, and the Debtor can confirm the Plan regardless of the Lender's votes in this class.

### D.  Post-Confirmation Management Objection

12.   Upon confirmation, the Debtor will become the Reorganized Debtor and retain the same corporate governance as it has had since its formation, with the same methods and procedures as it has always had for the appointment of managers. Jon Christian Amberson will be appointed Manager of the Debtor post-confirmation, as described in the Debtor's proposed form of confirmation order (the "Confirmation Order"), attached hereto as **Exhibit A**, in paragraphs Q and 8.

### E.  Additional Liquidation Objection

13.   Similarly, the McAllen Objection argues that the Reorganized Debtor will not have any income to repay the Lender Exit Loan Claims and that further liquidation will be necessary, but the Plan already contemplates all liquidation and reorganization necessary to make distributions to creditors. The Plan proposes to pursue the Debtor's claims and causes of action for the benefit of the Debtor's estate and all creditors, including utilizing additional financing as necessary according to section 6.3 of the Plan to fund the pursuit of such claims and causes of action. Included among the Causes of Action is the CG Dispute, currently on appeal before the United States District Court for the Western District of Texas as Cause Number 5:20-cv-01193-

FB. The Lender Exit Loan Claims provide the Debtor with cash now to make a distribution to creditors while those creditors await further distributions of any Distributable Cash. The Plan proposes to repay the Lender Exit Loan Claims with Distributable Cash to the extent the Debtor is successful in monetizing its interest in its Causes of Action. The Plan already contemplates such liquidation; thus the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(11).

## F. Absolute Priority Rule Objection

14.    The Debtor's provision for distributions to equity does not violate the absolute priority rule but rather provides for the Reorganized Debtor to make valuable distributions to its members in the event all of its creditors are paid in full. The Plan requires the Reorganized Debtor to distribute Distributable Cash in accordance with the classification scheme in the Plan. That classification scheme ensures that, except where specifically stated otherwise, each class of claims will receive distributions in full satisfaction of such claims before any junior class receives distributions. Put another way, the Plan provides that the value realized from the Causes of Action goes first to repaying all creditors in full, and only afterwards would any such value flow to the Debtor's membership interest holders. The Plan thereby satisfies the absolute priority rule. *See* 11 U.S.C. § 1129(b)(ii).

## G. Best Interests Objection

15.    The McAllen Objection asserts that the Plan is not in the best interests of the creditors under 11 U.S.C. § 1129(a)(7) because the Plan allegedly provides only $80,000.00 of value for distribution to creditors. The Plan, however, provides for the benefit of all Distributable Cash, which includes the proceeds from all Causes of Action, including the CG Dispute, to flow to creditors until their claims are paid in full, before the Debtor distributes to its equity interest holders. As stated in the liquidation analysis in the Disclosure Statement, Section I.F.3, the Lender Exit Loan provides $80,000.00 in immediate cash for distribution to creditors that would not be

available to creditors in a chapter 7 liquidation. The Plan further provides for the liquidation of the Debtor's Causes of Action for distribution to creditors, which would also be available in a chapter 7 liquidation, though on equivalent or less advantageous terms, including likely contingent fee counsel costs and administrative claims of a chapter 7 trustee to litigate the Causes of Action and obtain Distributable Cash. The Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7)(A).

### III.    Conclusion

For the reasons stated herein and in the Disclosure Statement, and because the classes of creditors other than the McAllen Parties have voted unanimously in favor of the Plan, the Debtor requests that the Court confirm the Plan, and for any other just relief.

Dated: March 1, 2021

*/s/ Scott D. Lawrence*
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

**COUNSEL FOR DEBTOR**

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served, on this March 1, 2021, electronically through the Court's electronic case filing system on the parties listed below:

Raymond W. Battaglia on behalf of Creditor Carla Morrison
rbattaglialaw@outlook.com

---

Kevin M. Lippman on behalf of Creditor Munsch Hardt Kopf & Harr, P.C.
klippman@munsch.com, pmoore@munsch.com

United States Trustee - SA12
USTPRegion07.SN.ECF@usdoj.gov

Natalie F. Wilson and David S. Gragg on behalf of Creditors El Rucio Land and Cattle Company, Inc., McAllen Trust Partnership, Ltd.. San Juanito Land Partnership, Ltd. and James Argyle McAllen
nwilson@langleybanack.com, cjohnston@langleybanack.com;sfoushee@langleybanack.com, dgragg@langleybanack.com,

Bradley S Balderrama on behalf of Creditor Bexar County
Brad.Balderrama@lgbs.com

Steven B. Bass on behalf of Creditor United States of America, IRS
Steven.Bass@usdoj.gov, lori.wilson@usdoj.gov

James A. Hoffman on behalf of Creditor Broadway National Bank
jhoffman@langleybanack.com, sfoushee@langleybanack.com

Diane W. Sanders on behalf of Creditor Hidalgo County
austin.bankruptcy@publicans.com

Donald P. Stecker on behalf of Creditors Bexar County and Hidalgo County
don.stecker@lgbs.com

/s/ Scott D. Lawrence
Scott D. Lawrence

# **<u>Exhibit A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 20-51302-CAG** |
| **AMBERSON NATURAL RESOURCES, LLC** | § | |
| | § | **Chapter 11** |
| **DEBTOR.** | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
DEBTOR'S CHAPTER 11 PLAN**
*Relates to ECF No. 58*

Upon the *Chapter 11 Plan*, as it may be modified, amended or supplemented from time to time (ECF No. 58 and attached to this Order as **Exhibit A**, the "Plan"),[1] filed by Amberson Natural Resources, LLC (the "Debtor") debtor and debtor-in-possession of the bankruptcy estate (the "Estate") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case"); and considering the *Disclosure Statement for Debtor's Chapter 11 Plan* (ECF No. 59, the "Disclosure Statement"); and the Plan and the Disclosure Statement having been distributed or made available to holders of Claims and Equity Interests and other parties in interest as provided in the *Order*

---

[1] Capitalized terms not otherwise defined herein are used as defined in the Plan.

*Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof* (ECF No. 82, the "Solicitation Order"); and upon the hearing to consider confirmation of the Plan conducted on March 3, 2021 (the "Confirmation Hearing"); and good and sufficient notice of the Plan, the Disclosure Statement, and the Confirmation Hearing having been provided to holders of Claims and Equity Interests in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the Western District of Texas (the "Court" or the "Bankruptcy Court") and the orders of this Bankruptcy Court, as established by the certificates and affidavits of service filed with the Court (ECF Nos. 84 and 85, without limitation, the "Notice Affidavits"), and such notice being sufficient under the circumstances and no other or further notice being required; and after full consideration of (i) the declaration of Jon Christian Amberson in Support of the Plan (ECF No. ___, the "Amberson Declaration") and further testimony adduced at the Confirmation Hearing; and (ii) the declaration filed by Scott Lawrence (the "Tabulation Agent"), dated March 1, 2021, regarding the methodology applied to the tabulation of the voting results with respect to Plan (ECF No. 97, the "Lawrence Declaration"); and upon the informal and formal objections to confirmation of the Plan (collectively, the "Objections"), if any; and upon the entire record of this Chapter 11 Case, the record made at the Confirmation Hearing and the arguments of counsel and all of the evidence adduced thereat; and the Court having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.      <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

B.      <u>Jurisdiction, Venue, Core Proceeding</u>. This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## CHAPTER 11 CASE

C.      <u>Commencement of the Chapter 11 Case</u>.  On July 20, 2020 (the "<u>Petition Date</u>"), the Debtor initiated this Chapter 11 Case by filing a voluntary chapter 11 petition in the Court.

D.      No trustee, official committee of unsecured creditors, or any other official committees have been appointed or designated. The Debtor continues to serve as a debtor and debtor in possession of the Estate in this Chapter 11 Case. The Debtor proposed the Plan.

E.      <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and pleadings reflected therein including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and

arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

## SOLICITATION AND NOTICE

F.    <u>Solicitation and Notice</u>. On January 22, 2021, the Court entered the Solicitation Order, which, among other things, (i) approved the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code; (ii) established procedures for the solicitation of votes on the Plan; and (iii) scheduled a hearing and established notice and objection procedures for confirmation of the Plan. The following materials (collectively, the "<u>Solicitation Materials</u>") were served upon parties in interest in compliance and in accordance with the Bankruptcy Rules and the Solicitation Order, as applicable:

- the Plan;

- the Disclosure Statement;

- the Solicitation Order; and

- ballots for accepting or rejecting the Plan.

G.    As described in the Lawrence Declaration and the Notice Affidavits (a) the service of the Solicitation Materials was adequate and sufficient under the circumstances of the Chapter 11 Case and (b) adequate and sufficient notice to holders of Claims and Equity Interests of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Order was timely provided in compliance with the Bankruptcy Rules and the Solicitation Order.

H.    <u>Voting</u>. Votes on the Plan were solicited after disclosure to holders of Claims and Equity Interests of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Lawrence Declaration, votes to accept or reject the Plan have been solicited and

tabulated fairly, in good faith, and in a manner consistent with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## COMPLIANCE WITH THE REQUIREMENTS OF
## SECTION 1129 OF THE BANKRUPTCY CODE

I.      <u>Burden of Proof</u>. The Debtor has met the burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

J.      <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

K.      <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Articles III and IV of the Plan designate eight (8) Classes of Claims against and Equity Interests in the Debtor. As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Articles III and IV of the Plan specify that Class 1 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles III and IV of the Plan specify that Classes 2, 3, 4, 5, 6, 7, and 8 are impaired and set forth the treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Article IV of the Plan provides for the same treatment under the Plan for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment in respect of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides for adequate and proper means for its implementation including, without limitation, (a) sources of consideration for distributions, (b) the retention of Equity Interests, (c) the vesting of the Causes of Action in the Reorganized Debtor; and (d) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Because the Debtor is liquidating, the prohibition on the issuance of nonvoting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code, is not applicable.

(vii)    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. No changes to the Debtor's existing corporate organization, including the manner of selection of any officer,

director, or trustee, is contemplated under the Plan, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

L.      <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i)      <u>Impairment/Unimpairment of Any Class of Claims or Interests (§ 1123(b)(1))</u>. Pursuant to the Plan, Class 1 is unimpaired and Classes 2, 3, 4, 5, 6, 7, and 8 are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii)      <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. Article IX of the Plan provides for the assumption of the Debtor's remaining executory contracts and unexpired leases (if any), effective as of the Effective Date, except for any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned or rejected pursuant to an Order of the Bankruptcy Court entered on or before the Confirmation Date, (b) previously expired or terminated by its own terms or (c) is the subject of a motion to assume, assume and assign or reject filed on or prior to the Confirmation Date.

(iii)      <u>Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))</u>. Article VI of the Plan provides for settlement of certain Claims and Causes of Action and the retention and enforcement of other Claims and Causes of Action by the Reorganized Debtor. As set forth below, the proposed Plan settlements are approved as fair and equitable.

(iv)      <u>Modification of the Rights of Holders of Claims (11 U.S.C. § 1123(b)(5))</u>. Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and Equity Interests.

(v)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) distributions to holders of Claims and Equity Interests, (b) retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (c) resolution of Disputed Claims and Disputed Equity Interests, (d) allowance of certain Claims and Equity Interests, (e) releases by the Estate and certain parties of certain other parties, and (f) exculpations of certain parties. For the avoidance of doubt and without limitation, all claims and causes of action listed on the Debtor's schedules of assets and liabilities filed on the public docket of this Court prior to entry of this order, constitute "Causes of Action" as that term is defined in the Plan.

M.     Cure of Defaults (11 U.S.C. § 1123(d)). The Plan does not contemplate the cure of any defaults. Thus, section 1123(d) of the Bankruptcy Code is not applicable.

N.     Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

O.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the record made at the Confirmation Hearing and the other proceedings in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estate. The Plan was negotiated at arm's-length among

various important stakeholders in the Chapter 11 Case. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length. Such provisions are consistent with sections 105, 1122, 1123(b)(6), 1125, 1129, and 1142 of the Bankruptcy Code, are each necessary for the success of the Plan, and were not included in the Plan for any improper purpose.

P.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment to be made by the Estate, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The Debtor has disclosed that Jon Christian Amberson will continue to serve as the Manager of the Debtor, and his appointment is consistent with the interests of holders of Claims and Equity Interests and with public policy.

R.      No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

S.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Each holder of an impaired Claim or Equity Interest that has not accepted the Plan will on account of such Claim, as demonstrated by the liquidation analysis included in the Disclosure Statement, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

T.      Acceptance by/Unimpairment of Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1

is unimpaired by the Plan and holders of Claims in such Class, if any, are thus conclusively

presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Class

2 Claims voted, as established by the Lawrence Declaration, and no claimants have asserted their

claims should be classified as Class 2 Claims. Classes 3, 4, 6, 7, and 8 are impaired by the Plan,

and each such Class has accepted the Plan in accordance with section 1126(d) of the Bankruptcy

Code, as established by the Lawrence Declaration. Class 5 is impaired by the Plan and voted to

reject the Plan, as established by the Lawrence Declaration, therefore Class 5 did not vote to accept

the Plan in accordance with section 1126(d) of the Bankruptcy Code. As a result, Section

1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes except Class 5.

The Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code,

because the Plan does not discriminate unfairly between and among the classes described therein

and the Plan is fair and equitable with respect to Class 5. The Plan provides that Allowed Claims

in Class 5 will be paid in full prior to any distributions on account of claims or interests junior to

Class 5.

U.      Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C.

§ 1129(a)(9)). The treatment of Administrative Expense Claims and Priority Tax Claims pursuant

to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

V.      Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).

As described above and in the Lawrence Declaration, Classes 3, 4, 6, 7, and 8 were impaired and

voted to accept the Plan. Section 1129(a)(10) is, therefore, satisfied.

W.      Feasibility (11 U.S.C. § 1129(a)(11)). The Plan proposes for the Debtor's

remaining valuable assets, namely the Causes of Action, to be retained, and funding to litigate

these Causes of Action to be provided by the Lender. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

X.      Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees due and payable pursuant to section 1930 of title 28, United States Code, as determined by the Court in the event of a dispute, have been or will be paid by the Estate on the Effective Date pursuant to section 2.4 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Y.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtor is not responsible for the payment of any "retiree benefits," as defined in section 1114 of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code is thus inapplicable in these Chapter 11 Cases.

Z.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.     Debtor Not Individual (11 U.S.C. § 1129(a)(15)). The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Debtor.

BB.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtor is not a non-profit corporation or trust. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

CC.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan subject to confirmation. Section 1129(c) of the Bankruptcy Code is satisfied.

DD.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

EE.    <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>. The Chapter 11 Case is not a small business case and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

## <u>COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE</u>

FF.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in the Chapter 11 Case and the Lawrence Declaration, the Exculpated Parties and each of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys, agents, successors and assigns, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter 11 Case, the negotiation and pursuit of approval of the Disclosure Statement, the preparation and solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## <u>COMPLIANCE WITH SECTION 1126 OF THE BANKRUPTCY CODE</u>

GG.    <u>Acceptance of Plan (11 U.S.C. § 1126)</u>. As set forth in the Lawrence Declaration, Classes 3, 4, 6, 7, and 8 were impaired and voted to accept the Plan, in accordance with the requirements of section 1126 of the Bankruptcy Code. Class 5 was impaired and voted to reject the Plan, however, the Debtor has satisfied the requirements of section 1129(b) to confirm the Plan notwithstanding Class 5's vote to reject the Plan.

**PLAN IMPLEMENTATION**

FF.     The terms of the Plan are incorporated by reference and are, except as addressed herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

GG.     The Plan has been negotiated in good faith and at arm's-length and shall, on and after the Effective Date, constitute legal, valid, binding and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

HH.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtor, the Lender, and the Estate, and all of their respective members, managers, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, funds, agents and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

II.     Lender Settlement. The Lender Settlement among the Debtor, the Reorganized Debtor, the Estate, and the Lender (collectively, the "Lender Settlement Parties") is necessary to and is an integral and essential element of the Plan and its consummation. The terms and conditions of the Lender Settlement are fair and reasonable under the circumstances. The performance by the Lender Settlement Parties of the terms thereof is authorized, and the parties are directed to consummate the same. The Lender Settlement is the product of arm's-length negotiations among the Lender Settlement Parties and has been proposed in good faith, for legitimate business

purposes, is supported by reasonably equivalent value and fair consideration and reflects the Debtor's exercise of reasonable business judgment.

JJ.    The Lender Settlement satisfies the requirements of Bankruptcy Rule 9019, including proper consideration of

(i)    the Debtor's probability of success on the merits of all claims released as part of the Lender Settlement;

(ii)    the complexity, expense, and likely duration of litigation on all claims released as part of the Lender Settlement; and

(iii)    other facts and circumstances bearing on the wisdom of the Lender Settlement.

KK.    Entry into the Lender Settlement and consummation of the same is in the best interests of the Estate, its creditors and its equity holders. The Debtor has provided all interested parties with sufficient and adequate notice of and an opportunity to be heard with respect to the Lender Settlement.

LL.    <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

MM.    The Debtor has exercised sound business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article IX of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in section 9.1 of the Plan shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

### EXCULPATIONS, INJUNCTIONS AND RELEASES

NN.    The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the exculpation, injunctions, stays and releases set forth in sections 11.3, 11.4, 11.6, and 11.7 of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and injunctions set forth in sections 11.3, 11.4, 11.6, and 11.7 of the Plan because, as has been established on the record in the Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the Lender Settlement and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Estate, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtor, the Estate, and parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor and the Estate, creditors and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and Equity Interests and are necessary to the proposed Plan. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support

the releases, exculpation, and injunctions provided for in sections 11.3, 11.4, 11.6, and 11.7 of the Plan. Accordingly, based upon the record in the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law.

## OTHER FINDINGS

OO.     <u>Conditions Precedent to Confirmation</u>. The conditions precedent to confirmation set forth in section 10.1 of the Plan have been satisfied.

PP.     <u>Retention of Jurisdiction</u>. This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

QQ.     <u>Objections</u>. All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections.

## THE PLAN SATISFIES CONFIRMATION REQUIREMENTS

RR.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

## ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     <u>Confirmation</u>. The Plan, as modified by this Confirmation Order, shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code.

2.     <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with the terms of the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.      <u>Objections</u>. All objections to the Plan not otherwise withdrawn at or prior to the Confirmation Hearing are overruled for the reasons articulated by the Court on the record at the Confirmation Hearing.

4.      <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Equity Interest in the Debtor and such holder's respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

5.      <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots submitted in connection with voting on the Plan: (a) were solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Estate for any purpose other than voting on the Plan.

6.      <u>Distribution Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VII of the Plan.

7.      <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. As set forth in section 6.7 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Estate's assets shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or this Confirmation Order. The vesting,

on the Effective Date, of the Estate's assets in the Reorganized Debtor does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

8.    <u>Manager Reappointed</u>. Jon Christian Amberson is hereby approved and appointed as the Manager of the Reorganized Debtor.

9.    <u>Notice of Confirmation Date and Effective Date</u>.

    a.    <u>Notice of Entry of Confirmation Order and Effective Date</u>. Within five (5) Business Days after the Effective Date, the Reorganized Debtor shall file on the docket and mail to all parties in interest in the Chapter 11 Case notice of (i) the entry of this Confirmation Order and (ii) the last date to file (A) requests for payment of Administrative Expense Claims pursuant to section 2.1 of the Plan and Fee Claims pursuant to section 2.2 of the Plan, and (B) Claims arising from the rejection of any executory contracts and unexpired leases pursuant to section 9.1 of the Plan.

10.    <u>Administrative Expense Claims</u>.

    a.    <u>Filing</u>. Except as otherwise provided in the Plan, all holders of Administrative Expense Claims arising from the Petition Date through the Effective Date, other than Professional Persons holding Fee Claims, shall file with the Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request shall, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim, (ii) the amount of the Administrative Expense Claim, and (iii) the basis for the Administrative Expense Claim. Requests shall be promptly served on counsel to the Debtor, Scott D. Lawrence (scott.lawrence@wickphillips.com). A failure to file any such request in a timely fashion shall result in the discharge of such Administrative Expense Claim and its holder shall be forever barred from asserting such Administrative Expense Claim against the Estate.

     b.    <u>Allowance</u>. An Administrative Expense Claim for which a request for payment has been timely filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of this Court.

     c.    <u>Payment</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim requests a different treatment of such Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or (ii) ten (10) days after entry of a Court order allowing such Administrative Expense Claim.

    11.    <u>Fee Claims</u>. Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Court's calendar permits, after consultation with counsel to the Debtor. Allowed Fee Claims shall be paid in accordance with and pursuant to section 2.2 of the Plan.

12.     <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

a.     <u>General</u>. Pursuant to section 9.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the Debtor is hereby deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor pursuant to an order of the Court, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed on or before the Confirmation Date. This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption or rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date. Such assumption or rejection shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

b.     <u>Bar Date for Cure Claims</u>. All Claims for cure amounts arising out of the assumption of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served upon counsel to the Debtor no later than thirty (30) days after the earlier of (i) the date of entry of a Court order (including this Confirmation Order) approving such assumption or (ii) the Effective Date. Any cure Claims not filed within such time shall be forever barred from assertion against the Debtor, the Reorganized Debtor, or the Estate.

13.     <u>General Authorization</u>. Upon the Effective Date, all action contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the structure of the Debtor, and any action required by or in connection with the Plan,

shall be deemed to have occurred and shall be in effect, without any requirement of further action by any person or entity.

14.  <u>Plan Settlements</u>. The Lender Settlement is hereby approved. The parties to each settlement are authorized and directed to take such actions as may be necessary to effectuate the same and perform all obligations contemplated thereby.

15.  <u>Post-Confirmation Reporting and Payment of Statutory Fees</u>. The Debtor will pay all fees pursuant to 28 U.S.C. § 1930 that are due on or before the Effective Date.  The Reorganized Debtor will pay all fees pursuant to 28 U.S.C. § 1930 that are due after the Effective Date. The Reorganized Debtor will be responsible for preparing and filing post-confirmation reports in a format prescribed by the U.S. Trustee.

16.  <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

17.  <u>Convenience Claims in Case No. 20-51324</u>. The Manager for the Debtor and Reorganized Debtor, Jon Christian Amberson, is also a chapter 11 debtor before this Court in case number 20-51324 (the "<u>Individual Case</u>"). All holders of Claims in this Chapter 11 Case also hold claims in the Individual Case. To the extent any holders of claims in the Individual Case elected treatment in the Individual Case as a Convenience Claim (as defined in the plan on file in the Individual Case at ECF No. 69), any such election is without prejudice to asserting claims in any amount as against Amberson Natural Resources, LLC.

18.  <u>Filing and Recording</u>. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such

date have been unconditionally released, discharged, and terminated, except as otherwise provided

in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including,

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and local officials, and all other persons and entities

who may be required, by operation of law, the duties of their office, or contract, to accept, file,

register, or otherwise record or release any document or instrument. Each and every federal, state,

and local government agency is hereby directed to accept any and all documents and instruments

necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to

effectuate, implement, and consummate the transactions contemplated by the Plan and this

Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax

imposed by state or local law, including, but not limited to, the transfer of any assets of the Estate

to the Reorganized Debtor.

19.     <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy

Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with

the Plan, the creation of any mortgage, deed of trust or other security interest, the making or

assignment of any lease or sublease, or the making or delivery of any deed or other instrument of

transfer under, in furtherance of, or in connection with the Plan, including any merger agreements

or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with

any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate

transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtor

and approved by the Court on and after the Petition Date through and including the Effective Date,

including the transfers effectuated under the Plan, if any, the sale by the Estate of property pursuant

to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Estate of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

20.     <u>Exculpation, Releases and Injunctions</u>. The exculpations, releases and injunctions contained in sections 11.3, 11.4, 11.6, and 11.7 of the Plan are hereby approved. The releases described in section 11.5 of the Plan are denied without prejudice.

21.     <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Article X of the Plan have been satisfied or waived pursuant to section 10.2 and 10.3 of the Plan.

22.     <u>Retention of Jurisdiction</u>. Upon the Effective Date, the Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan, section 1142 of the Bankruptcy Code, and 28 U.S.C. § 1334.

23.     <u>Appeal of the Confirmation Order</u>. Except as otherwise provided herein, if any provision of this Confirmation Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or Reorganized Debtor prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification,

or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto, and shall remain binding.

24.    <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that in the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Confirmation Order, the Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

25.    <u>Authorization to Consummate Plan/No Stay</u>. Notwithstanding Bankruptcy Rule 3020(e), 6004(g), 6006(d), 7062 or otherwise, but subject to Article X of the Plan, the Debtor is authorized to consummate the Plan upon entry of this Confirmation Order, and the Confirmation Order shall take effect on the date hereof.

###

PREPARED AND SUBMITTED BY:

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence. Tex. Bar No. 24087896
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile:  (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

**COUNSEL FOR DEBTOR**